IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 24-cv-01438-PAB-KAS

JULIE BROWNFIELD,

    Plaintiff,

v.

DENVER PUBLIC SCHOOLS,

    Defendant.

_____

**ORDER**
_____

    The matter before the Court is Defendant's Motion to Dismiss [Docket No. 13]. Plaintiff Julie Brownfield filed a response, Docket No. 18, and defendant replied. Docket No. 24. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

**I. BACKGROUND**[1]

    In 1998, Ms. Brownfield was diagnosed with Obsessive Compulsive Disorder ("OCD"). Docket No. 1 at 3, ¶ 11. OCD is a long-lasting disorder in which a person experiences uncontrollable or recurring thoughts, i.e. obsessions, or engages in repetitive behaviors, i.e. compulsions, or both. *Id.*, ¶ 13. The symptoms of Ms. Brownfield's OCD include repeated thoughts, urges, and mental images that are unwanted, intrusive, and cause anxiety. *Id.*, ¶ 15. Specifically, Ms. Brownfield has contamination OCD and has a substantial fear of germs or contamination. *Id.* Ms. Brownfield's OCD also causes compulsions such as silently counting, audibly or silently

---

[1] The following facts are taken from the Complaint and Jury Demand, Docket No. 1, and are presumed true for the purpose of ruling on the motion to dismiss.

repeating words, and repeating certain actions.  *Id.*, ¶ 18.  Her OCD affects the major life activities of being around others, concentrating, breathing, sleeping, and thinking, among others.  *Id.*, ¶ 19.

In 2014, Ms. Brownfield was diagnosed with Irritable Bowel Syndrome ("IBS").  *Id.*, ¶ 12.  IBS affects the stomach, intestines, and gastrointestinal tract.  *Id.*, ¶ 21.  Symptoms of IBS include cramping, abdominal pain, bloating, gas, diarrhea, and constipation.  *Id.*  Ms. Brownfield's IBS affects the major life activities of traveling, using the restroom, concentrating, and thinking, among others.  *Id.*, ¶ 22.

On December 15, 2021, Ms. Brownfield was hired by Denver Public Schools ("DPS") as a special education teacher for Denver Online High School ("Denver Online").  *Id.* at 4, ¶¶ 25, 27.

Denver Online is an online school that serves approximately six hundred and fifty middle and high school students who require a flexible, asynchronous, online learning environment.  *Id.*, ¶ 28.  The backbone of Denver Online is online instruction.  *Id.*, ¶ 29.  Asynchronous online learning allows students to view instructional materials and assignments online at any time they choose.  *Id.*, ¶ 30.  While students can attend live, class-wide, teacher-led instruction online via Zoom, attendance at these live learning sessions is optional.  *Id.*, ¶¶ 31–32.  Instead, student attendance and grades are based on the student's completion of online assignments.  *Id.*, ¶ 33.  Class-wide, in-person instruction is never offered by Denver Online.  *Id.*, ¶ 34.  However, individual students have the option to go to Denver Online's physical campus on Wednesdays for assistance completing their online assignments.  *Id.* at 5, ¶ 35.  During the 2021–2022 and 2022–2023 school years, Denver Online offered only online instruction.  *Id.*, ¶ 38.

2

At the time Ms. Brownfield was hired by Denver Online, all employees worked exclusively from home. *Id.*, ¶ 43. Because Denver Online offered only online instruction, Ms. Brownfield did not request an accommodation for her IBS or OCD when she was hired. *Id.*, ¶ 44. However, Ms. Brownfield was required to attend in-person professional development meetings, which typically lasted all day. *Id.* at 6, ¶¶ 45–46. The in-person meetings were extremely difficult for Ms. Brownfield and exacerbated her OCD and IBS symptoms, including panic attacks, shortness of breath, and dizziness. *Id.*, ¶¶ 48, 51.

Ms. Brownfield attended the professional development meetings in person through the fall of 2022. *Id.*, ¶ 53. Ms. Brownfield requested an accommodation to attend these meetings virtually for the spring of 2023. *Id.*, ¶ 54. DPS granted Ms. Brownfield this accommodation. *Id.*, ¶ 55. For the rest of the 2022–2023 school year, Ms. Brownfield worked remotely. *Id.* at 7, ¶ 56. Ms. Brownfield received a performance rating of "Effective" for the 2022–2023 school year. *Id.*, ¶ 57.

On January 6, 2023, the principal of Denver Online, Ian Jones, announced that all full-time staff would be required to work from Denver Online's physical campus building at least two days a week during the 2023–2024 school year. *Id.*, ¶ 59. The purpose of the requirement was to give students more opportunities to engage with teachers in person. *Id.*, ¶ 60. In the email announcing the change, Principal Jones stated that the only exception to the requirement that teachers be in-person two days a week would be for part-time teachers or for staff with an ADA accommodation approved by Human Resources ("HR"). *Id.*, ¶ 61.

On January 13, 2023, Ms. Brownfield completed a Request for Reasonable Accommodation and a Medical Verification form, in which she explained that she has been diagnosed with OCD and IBS and how an in-person work environment would substantially increase the detrimental symptoms of her conditions. *Id.*, ¶¶ 63–64. Ms. Brownfield provided documentation from her doctor confirming her OCD and IBS diagnoses. *Id.* at 8, ¶¶ 65–66. Her doctor stated that Ms. Brownfield needed to remain in a fully remote position. *Id.*, ¶ 68.

On February 1, 2023, Ms. Brownfield met with members of Denver Online's HR team and Principal Jones. *Id.*, ¶ 71. At the meeting, Ms. Brownfield was granted the accommodation of working fully remotely for the remainder of the 2022–2023 school year. *Id.*, ¶ 72. In May 2023, Ms. Brownfield requested to work remotely for the 2023–2024 school year. *Id.*, ¶ 73. DPS denied Ms. Brownfield's request to work remotely for the 2023–2024 school year and stated that drop-in days and weekly in-building staff time were required of all staff at Denver Online. *Id.* at 8–9, ¶¶ 74–75. DPS did not explain why it could grant Ms. Brownfield's accommodation request for the 2022–2023 school year, but not the 2023–2024 school year, despite the fact that her job position and responsibilities were the same. *Id.* at 9, ¶ 76. During the 2023–2024 school year, students still attended instruction sessions online and could not attend in-person class-wide instruction. *Id.*, ¶ 78. However, during a May 12, 2023 meeting, Mr. Jones and Kim Crouch, DPS's ADA and Leave Manager, insisted that working in-person two days a week had become an essential function of Ms. Brownfield's job. *Id.*, ¶ 82.

On May 15, 2023, Ms. Crouch emailed Ms. Brownfield to ask whether Ms. Brownfield would be interested in a different, fully remote position with DPS. *Id.* at 10,

4

¶ 85. However, after Ms. Brownfield replied that she would be interested in another position, Ms. Crouch stated that DPS had no entirely remote teaching positions for the 2023–2024 school year. *Id.*, ¶¶ 86, 88.

Without accommodation for her disability, Ms. Brownfield's working conditions would become intolerable, and the symptoms of her disabilities would worsen. *Id.*, ¶ 93. On June 1, 2023, Ms. Brownfield felt she had no choice but to resign her position with Denver Online. *Id.*, ¶ 91.

Ms. Brownfield filed this action on May 22, 2024. *Id.* at 1. Ms. Brownfield brings two claims against DPS, namely, one claim of disability discrimination under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 et seq., and one claim of failure to accommodate under the ADA. *Id.* at 11–13, ¶¶ 95–114. On July 29, 2024, DPS filed the motion to dismiss Ms. Brownfield's claims. Docket No. 13. On September 3, 2024, Ms. Brownfield responded. Docket No. 18. DPS replied on October 1, 2024. Docket No. 24.

**II. LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible." *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)). Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds

5

upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted). A court, however, does not need to accept conclusory allegations. *See, e.g.*, *Hackford v. Babbit*, 14 F.3d 1457, 1465 (10th Cir. 1994) ("[W]e are not bound by conclusory allegations, unwarranted inferences, or legal conclusions.").

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (alterations omitted).

### III. ANALYSIS

"Under the ADA, a 'covered entity' may not discriminate 'against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'" *Dansie v. Union Pac. R.R. Co.*, 42 F.4th 1184, 1192 (10th Cir. 2022) (quoting 42 U.S.C. § 12112(a)). Covered entities are "an employer, employment agency, [or] labor organization" and include a teacher's

6

school district.  *See Bostedo v. Cherokee Cnty. Sch. Dist.*, 2023 WL 11921669, at *4 (D.S.C. May 10, 2023) (quoting 42 U.S.C. § 12111(2)).  To state a prima facie claim of disability discrimination, Ms. Brown must plausibly allege that "(1) she is disabled as defined by the ADA; (2) she is qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) she suffered discrimination on the basis of her disability."  *Unrein v. PHC-Fort Morgan, Inc.*, 993 F.3d 873, 876–77 (10th Cir. 2021) (quoting *Hennagir v. Utah Dep't of Corr.*, 587 F.3d 1255, 1261 (10th Cir. 2009)).  The ADA defines "discriminat[ing] against a qualified individual on the basis of disability" to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the employer."  *Dansie*, 42 F.4th at 1192 (alterations and internal quotation omitted) (quoting 42 U.S.C. § 12112(a), (b)(5)(A)).  To state a prima facie failure-to-accommodate claim, Ms. Brownfield must plausibly allege that (1) she was disabled; (2) she was otherwise qualified; (3) she requested a plausibly reasonable accommodation; and (4) defendant refused to accommodate her disability.  *Id.* (citing *Aubrey v. Koppes*, 975 F.3d 995, 1005 (10th Cir. 2020)).

DPS does not challenge Ms. Brownfield's allegation that she is disabled as defined by the ADA.[2]  *See* Docket No. 13 as 1 ("Ms. Brownfield, who is disabled, requested that she be exempt from [certain] essential job functions.").  Instead, DPS

---

[2] To demonstrate disability for purposes of an ADA claim Ms. Brownfield must show (1) she has an impairment that (2) substantially limits (3) a major life activity. *Smothers v. Solvay Chemicals, Inc.*, 740 F.3d 530, 545 (10th Cir. 2014).  The Court agrees that Ms. Brownfield's allegations regarding the limitations she faces due to her OCD and IBS plausibly allege that she is disabled.  *See* Docket No. 1 at 2–4, ¶¶ 10–24.

7

seeks to dismiss Ms. Brownfield's disability discrimination claim and her failure-to-accommodate claim on the basis that the allegations in the complaint demonstrate that she cannot perform all the essential functions of her job. *See id.* at 6–10. Denver argues that the complaint alleges that an essential function of Ms. Brownfield's job was to be in-person for two days a week and that there was no accommodation that would allow her to fulfill this essential function while working remotely. *Id.*

DPS argues that Ms. Brownfield has not plausibly stated her disability discrimination claim because the allegations in her complaint demonstrate that she cannot satisfy the second element of the claim, namely, that she is qualified to perform the essential functions of the job with or without reasonable accommodation. *Id.* at 9. DPS maintains that essential job functions are functions that "bear more than a marginal relationship to the job at issue." *Id.* at 6 (quoting *Kilcrease v. Domenico Transportation Co.*, 828 F.3d 1214, 1221–22 (10th Cir. 2016)). DPS claims that in-person work became an essential function of Ms. Brownfield's job for the 2023–2024 school year. *Id.* at 3–4. It asserts that an employer is not required to accommodate a disabled worker by modifying or eliminating an essential function of a job. *Id.* at 7 (citing *Mathews v. Denver Post*, 263 F.3d 1164, 1168–69 (10th Cir. 2001) ("The idea of accommodation is to enable an employee to perform the essential functions of his job; an employer is not required to accommodate a disabled worker by modifying or eliminating an essential function of the job."); *Humbles v. Principi*, 141 F. App'x 709, 713 (10th Cir. 2005) (unpublished) ("An employer is not required to accommodate a disabled worker by modifying or eliminating an essential function of a job. In addition, an employer is not

8

required to accommodate a disabled worker by reallocating work duties such that other employees are forced to work harder." (citations omitted)).

Courts have generally declined to resolve disputes over whether a function of a job is essential on a motion to dismiss. *See, e.g.*, *Martinez v. Bitzer Prods. Co.*, 2012 WL 1409537, at *2 (N.D. Ill. Apr. 23, 2012) ("Bitzer contends that because Martinez alleges that he cannot use his right arm for long periods of time . . . he cannot perform the essential functions of his job. . . . Whether these duties are considered essential functions of Martinez's job, and whether or not he could perform essential duties with or without reasonable accommodation requires a factual inquiry into the demands of his job and the nature of his disability that is beyond the scope of the pleadings." (citing *Hayes v. Elementary Sch. Dist. No. 159*, 2011 WL 1059890, at *3 (N.D. Ill. Mar. 21, 2011)); *Miller v. Kendall*, 2016 WL 4472748, at *2 (W.D.N.Y. Aug. 25, 2016) (finding that "the nature of a job's essential functions is a fact-bound question ill-suited for resolution on a motion to dismiss" and that plaintiff's allegations that he "was and is able to perform the functions of his job" and that he "has been employed with the Defendant since 1987" "sufficiently alleges that the Plaintiff could perform the essential functions of his job particularly since he was apparently capable of doing so before the events giving rise to this case" (quotations, alterations, and citation omitted)). Even on summary judgment or at trial, "it is the employer who bears the burden of demonstrating that a job function is essential because, after all, the employer is in the best position to do so." *Unrein*, 993 F.3d at 877 (bench trial); *see also Mannan v. Colorado*, 841 F. App'x 61, 66–67 (10th Cir. 2020) (unpublished) (summary judgment) ("Courts require an employer to come forward with evidence concerning whether a job requirement is an essential

9

function." (quoting *Hawkins v. Schwan's Home Serv., Inc.*, 778 F.3d 877, 889 (10th Cir. 2015) (summary judgment)).  "This is a 'factual inquiry' in which 'courts must give consideration to the employer's judgment as to what functions of a job are essential.'" *Unrein*, 993 F.3d at 877 (quoting *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1191 (10th Cir. 2003)).

DPS states that, "[a]lthough the question of whether a function is essential is typically one of fact, there is no question here about whether in-person work at Denver Online was an essential function of the job for the 2023-2024 school year."  Docket No. 24 at 4.  DPS makes three arguments as to why, on a motion to dismiss, the Court should dismiss Ms. Brownfield's disability discrimination claim based on the essential functions of her job.  *See* Docket No. 13 at 6–10.  First, DPS argues that Ms. Brownfield's allegation that her "job position and responsibilities were the same" during the 2022–2023 and 2023–2024 school years, Docket No. 1 at 9, ¶ 76, is conclusory and need not be accepted as true by the Court.  Docket No. 13 at 7.  The Court disagrees with DPS's first argument.  The complaint alleges that Ms. Brownfield was hired as a special education teacher for Denver Online on December 15, 2021 and served in that position until she resigned on June 1, 2023.  Docket No. 1 at 4, 10, ¶¶ 25–27, 91.  The complaint alleges that "Denver Online is an innovative online school" and that the "backbone of Denver Online School is online instruction."  *Id.* at 4, ¶¶ 28–29.  Moreover, the complaint asserts that, for the 2023–2024 school year, "[s]tudents still attended instruction sessions entirely online and could not attend in person class-wide instruction ever, even if a student wished to do so" and that "[s]tudent attendance and grades remained entirely dependent on completing asynchronous assignments."  *Id.* at 9,

10

¶¶ 77–78.  Taken together, these allegations make plausible Ms. Brownfield's assertion that her position and responsibilities as a special education teacher for an online high school remained the same for the 2023–2024 school year given that the primary modes of instruction and evaluation were unchanged.

Next, DPS argues that the complaint specifically alleges that the essential functions of Ms. Brownfield's job changed for the 2023–2024 school year.  Docket No. 13 at 7 ("Brownfield admits in her Complaint that in-person work with students was an essential function of her job for the 2023-2024 school year" (citing Docket No. 1 at 9, ¶ 82).  DPS relies on Ms. Brownfield's allegation that, "[w]hen denying Ms. Brownfield's reasonable accommodation request, Mr. Jones and Ms. Crouch insisted that working in person two days a week had become an essential function of her job."  Docket No. 1 at 9, ¶ 82.  DPS maintains that courts "must give consideration to the employer's judgment as to what functions of a job are essential."  Docket No. 13 at 7 (quoting *Unrein*, 993 F.3d at 877); *see also Mannan*, 841 F. App'x at 67 ("our disability-discrimination caselaw counsels in favor of deference to an employer's judgment concerning essential functions" (citation and alterations omitted)).

"The deference provided to employers regarding what functions are essential, however, is not limitless, as 'an employer may not turn every condition of employment which it elects to adopt into a job function, let alone an essential job function.'"  *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1192 (10th Cir. 2018) (citing *Hawkins*, 778 F.3d at 889).  Here, Ms. Brownfield does not allege that her essential job functions changed. Docket No. 1 at 9, ¶ 82.  Instead, she alleges that her principal and HR staff believed in-person attendance had become an essential function of her job.  *Id.*  The fact that the

11

principal and HR took that position does not mean that, on a motion to dismiss that position is determinative, especially given Ms. Brownfield's allegation that her job functions were the same the year before.

Finally, DPS argues that the documents Ms. Brownfield attaches to her complaint demonstrate that in-person attendance had become an essential function of her job. Docket No. 13 at 6–8 ("Brownfield herself attached exhibits to her Complaint evidencing that the essential functions of her job changed for the 2023-2024 school year." (citing Docket Nos. 1-2, 1-3,[3] 1-4, 1-7)).[4] Generally, a court should not consider any evidence beyond the pleadings when ruling on a 12(b)(6) motion, *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019), and if the court considers matters outside the complaint, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, the Tenth Circuit has recognized a "limited exception" to this rule: the "district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not

---

[3] Although DPS cites Docket No. 1-3, DPS does not discuss the exhibit. *See* Docket No. 13. The exhibit is an academic schedule for the 2023–2024 school year for students and indicates that students "will also be able to engage in-person on Wednesdays as part of our 'Drop-In Learning Days.'" Docket No. 1-3 at 1. For the reasons discussed below, the Court will not consider the contents of Docket No. 1-3.

[4] DPS cites *Jackson v. Alexander*, 465 F.2d 1389, 1390 (10th Cir. 1972), for the proposition that the Court can consider these documents and reject Ms. Brownfield's allegations that she was qualified to perform the essential functions of her job because courts "need not accept as true . . . allegations of fact that are at variance with the express terms of an instrument attached to the complaint as an exhibit and made a part thereof." Docket No. 13 at 7 (quoting *Jackson*, 465 F.2d at 1390). In *Jackson*, the court construed the terms of an option clause in a contract. *See Jackson*, 465 F.2d at 1391. DPS relies on a series of emails and a "2023-24 Blended/Personalized Learning Staff Plan" to argue that the allegations in Ms. Brownfield's complaint are inconsistent with the facts of the case. Docket No. 13 at 7 (citing Docket Nos. 1-2, 1-3, 1-4, 1-7). Ms. Brownfield does not attach a legal instrument to her pleading and *Jackson* is inapplicable to the exhibits attached to the complaint.

dispute the documents' authenticity." *Waller*, 932 F.3d at 1282. However, a court has "broad discretion in determining whether or not to accept materials beyond the pleadings." *Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998). When a court takes judicial notice of documents, it may do so only to "show their contents, not to prove the truth of the matters asserted therein." *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (citation omitted).

DPS relies on the "2023-24 Blended/Personalized Learning Staff Plan" which Ms. Brownfield attaches to her complaint. Docket No. 13 at 6–7 (citing Docket No. 1-1); Docket No. 1 at 4 n.1. This document is a table that lists activities, a description of the activity, who is responsible for the activity, and how frequently the activity will occur. Docket No. 1-2 at 1. For the activity labeled "Drop-in Learning Days," the description states that

> Each week, Denver Online will offer a learning center model where students can come for an in-person learning environment. This environment is still intended to support Online Instruction, but can provide students with a more personalized connection to the course content, including but not limited to reteach lessons, alternate assessment opportunities, labs, discussions, group projects, etc. This is also a time where the Denver Online team can create meaningful connections with students, team members and supportive adults in a vibrant, welcoming, humanized community for learning that is capitalizing on the flexibility of a digitally-based school.

*Id.* at 2. The table states that "All Staff" are responsible for "Drop-in Learning Days." *Id.* DPS argues that the table demonstrates that Ms. Brownfield's in-person attendance was required to allow her to "work directly with students." Docket No. 13 at 7.

DPS also relies on a series of emails sent to Ms. Brownfield which she attaches to the complaint. *Id.* (citing Docket Nos. 1-4, 1-7); *see also* Docket No. 1 at 7 n.5, 10 n.11. The first email DPS cites is the email sent by Principal Jones announcing that

13

teachers will be required to be in-person two days a week.  Docket No. 1-4 at 2–3.  In the email, Principal Jones states that "I have decided and informed our School Leadership Team (SLT) that all full-time staff members will be required to work from the building no less than two days per week next year.  The only exceptions that will be made will be for team members who have an HR-approved ADA accommodation or those who are working part-time at Denver Online." *Id.* at 3.  Finally, DPS relies on a series of emails between Ms. Crouch and Ms. Brownfield in which Ms. Crouch states that, "[a]s of the 23/24 school year, the Denver Online will be a hybrid model.  Unfortunately, Ian is not able to accommodate the full remote schedule as the staff is required to be in [the] building 2 days a week."  Docket No. 1-7 at 2; Docket No. 13 at 7.

First, DPS has not shown that these documents should be considered by the Court in ruling on the motion to dismiss.  "The exception of considering extrinsic documents without converting the motion to dismiss is 'a narrow [one] aimed at cases interpreting, for example, a contract.'" *7-Eleven, Inc. v. Shakti Chicago, Inc.*, 2019 WL 2491534, at *1 (N.D. Ill. June 14, 2019) (alterations in original) (quoting *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998) ("documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are *central* to his claim").  "It is not intended to grant litigants license to ignore the distinction between motions to dismiss and motions for summary judgment." *Levenstein*, 164 F.3d at 347.  Although the documents attached to Ms. Brownfield's complaint are evidence of the intent behind Principal Jones's decision to require Denver Online staff to be in-person two days a week and evidence of DPS's reasons to deny Ms. Brownfield's request to work remotely, neither the emails nor the schedule serve as

14

the basis for Ms. Brownfield's claims.[5]  As such, the documents are not central to her claims, and the Court will not consider them.

Second, even if the Court were to consider these documents, DPS is seeking to use these documents to prove the truth of what they assert, i.e. that Ms. Brownfield's essential job functions changed, rather than the mere fact that Ms. Brownfield received these documents and what the documents say.  The truth of these documents cannot be assumed on a motion to dismiss.  *Tal*, 453 F.3d at 1264 n.24 (a court may take judicial notice of documents only to "show their contents, not to prove the truth of the matters asserted therein").  Third, even if the Court were to consider these documents for the purposes DPS suggests, DPS's argument still fails.  For the reasons discussed above, DPS has not shown that the fact that Principal Jones and HR took the position that in-person student interaction had become an essential function of Ms. Brownfield's job means their position is dispositive and renders Ms. Brownfield's contrary allegations insufficient.  *Kilcrease*, 828 F.3d at 1221.  Finally, in the email announcing that Denver Online will require in-person staff attendance, Principal Jones states that exceptions will be made for "team members who have an HR-approved ADA accommodation."  Docket No. 1-4 at 3.  This statement begs the question of whether Ms. Brownfield should have

---

[5] In the motion to dismiss, DPS states that the "facts pled by Brownfield, including the exhibits attached to her complaint, show that while in-person work with students was not an essential job function when the District hired her, it was an essential function prior to the COVID-19 pandemic and once again became an essential function beginning in the 202[3]-2024 school year."  Docket No. 13 at 7; *see also id.* a 2 ("Prior to the COVID-19 pandemic, an essential function of Denver Online teachers' jobs was in-person work, four days a week; 'fully remote work was never the intention at Denver Online.'" (quoting Docket No. 1–4 at 3)).  The COVID-19 pandemic is not mentioned in Ms. Brownfield's complaint.  DPS's attempt to contextualize the allegations in Ms. Brownfield's complaint is improper on a motion to dismiss and the Court will not consider the relevance of the pandemic on Ms. Brownfield's claims.

15

been given an ADA accommodation, and it suggests that in-person attendance, in fact, was not essential such that no accommodations could be made. For all these reasons, the Court will not consider the exhibits Ms. Brownfield attaches to the complaint for purposes of ruling on DPS's motion to dismiss. The Court therefore rejects DPS's arguments that the complaint demonstrates that in-person attendance was an essential function of Ms. Brownfield's job for the 2023–2024 school year.

Considering only the allegations in the complaint, the Court finds that Ms. Brownfield has plausibly alleged that she is qualified to perform the essential functions of her job. Ms. Brownfield alleges that she was hired to work as a special education teacher on December 15, 2021 for an online high school. Docket No. 1 at 4, ¶¶ 25, 27–28. She claims that the backbone of Denver Online School is online instruction, that students are never required to attend in-person classes, and that students are evaluated through assignments completed online. *Id.*, ¶¶ 29–33. Ms. Brownfield asserts that Denver Online has never offered in-person, class-wide instruction, including during the 2023–2024 school year. *Id.* at 4, 9, ¶¶ 34, 77–78. Ms. Brownfield alleges that she was given an ADA accommodation to work fully remotely for the spring of 2022 and that she received a performance rating of "Effective" for the 2022–2023 school year. *Id.* at 6, 7, ¶¶ 55, 57. The Court finds that these allegations are sufficient to plausibly allege that Ms. Brownfield is qualified to perform the essential functions of her job at an online-based school while working remotely. *Miller*, 2016 WL 4472748, at *2 (finding that plaintiff's allegations that he "was and is able to perform the functions of his job" and that he "has been employed with the Defendant since 1987" "sufficiently alleges that the Plaintiff could perform the essential functions of his job particularly since

16

he was apparently capable of doing so before the events giving rise to this case"). Because this is the only element of Ms. Brownfield's disability discrimination claim that DPS challenges, the Court will deny that part of DPS's motion seeking to dismiss Ms. Brownfield's first claim.

DPS argues that Ms. Brownfield has not stated her failure-to-accommodate claim because she has not alleged that she requested a plausibly reasonable accommodation. Docket No. 13 at 6–8. DPS states that the Tenth Circuit has "held that a 'request to work from home is unreasonable if it eliminates an essential function of the job,' unless the employee can show that she can 'perform the essential functions of the position at home.'" *Id.* at 8 (quoting *Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1124 (10th Cir. 2004)). DPS claims that, because "in-person work with students was an essential function of a Denver Online teacher's job for the 2023-2024 school year, Brownfield's request to be excused from that requirement and work remotely was not a plausibly reasonable accommodation." *Id.*

Ms. Brownfield alleges that she was a special education teacher at an online school; that she received an accommodation to work remotely for the spring of 2022; that she received a performance rating of "Effective" for the 2022–2023 school year; that class-wide, in-person instruction was not offered during the 2023–2024 school year; and that her job position and responsibilities did not change for the 2023–2024 school year. Docket No. 1 at 4, 6, 7, 9, ¶¶ 25, 27–28, 34, 55, 57, 76–78. These allegations are sufficient to plausibly allege that she requested a reasonable accommodation to work remotely, given that she was previously granted this accommodation and that the basic format of instruction and grading for the online school remained the same. *Dansie*, 42

17

F.4th at 1192 (plaintiffs must show they requested a plausibly reasonable accommodation). For the reasons discussed above, the Court rejects DPS's arguments that the allegations in the complaint demonstrate that in-person attendance was an essential function of Ms. Brownfield's job such that her accommodation request was unreasonable. Because this is the only element of Ms. Brownfield's failure-to-accommodate claim that DPS challenges, the Court will deny DPS's motion to dismiss.

IV. **CONCLUSION**

For the foregoing reasons, it is

**ORDERED** that the Defendant's Motion to Dismiss [Docket No. 13] is **DENIED**.

DATED March 10, 2025.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge